UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO. 5:13-CR-00045-TBR-1


UNITED STATES OF AMERICA                                        Plaintiff

v.

JOSE MANUEL JIMENEZ                                             Defendant
(Defendant No. 1)

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendant Jose Manuel Jimenez's Motion to Suppress. (Docket No. 50.) The United States filed an initial Response to Defendant's Motion on April 1, 2014. (Docket No. 53.) On May 6, 2014, the Court held a suppression hearing on Defendant's Motion in Paducah, Kentucky. The transcript of that hearing appears in the record at Docket No. 63. During that hearing, the United States presented evidence through the testimony of Sergeant Jesse Riddle and Detective Ryan Norman of the McCracken County Sheriff's Department (MCSD) (*See* Docket No. 63.) Consistent with the Court's Order of May 8, 2014, (Docket No. 60), Defendant filed his posthearing brief on May 29, 2014, (Docket No. 66), and the United States responded with its posthearing brief in opposition on June 12, 2014, (Docket No. 67). This matter now is ripe for adjudication. For the reasons that follow, Defendant's Motion to Suppress will be DENIED.


## BACKGROUND

At the time of Defendant's arrest in May 2013, the MCSD was conducting an investigation into methamphetamine trafficking in and around McCracken County,

Kentucky. During a prior meth investigation in August 2012, Sergeant Riddle had arrested an individual named James Boggess According to Sergeant Riddle, Boggess admitted to selling approximately a half pound of meth each week. Boggess posted bond and was released from jail but then failed to appear for court. Sergeant Riddle testified that through several known and unknown informants, the detectives learned that Boggess had fled to Mexico where he was still operating his business of selling controlled substances through contacts in the McCracken County area.[1]

Through the course of investigating Boggess, the MCSD was able to cultivate a cooperating witness who had specific knowledge of Boggess's operations and who could contact Boggess via cell phone. This cooperating witness had provided information on a case some years prior after she was arrested in 2005. Sergeant Riddle monitored several conversations between the cooperating witness and Boggess in which the cooperating witness attempted to arrange for a quantity of meth to be delivered locally.

The cooperating witness was ultimately successful in arranging for some four to five pounds of meth to be delivered to a secluded location in McCracken County. Sergeant Riddle said Boggess had given specific instructions and told the cooperating witness that he had a contact in Mexico who would get in touch with someone in Arkansas, who then in turn would deliver the meth on May 15. Boggess could not say what time specifically the courier would arrive on May 15; however, Boggess but did say that the individual would be traveling from Arkansas "about four hours away" and that he would depart sometime around 4:00 or 5:00 p.m. after getting off work.

---

[1] Boggess, apparently, has since been murdered in Mexico.

Boggess was given the delivery address, 1830 Fisher Road, and would be providing that address and the cooperating witness's cell phone number to the individuals on his end. The designated location on Fisher Road was a vacant residence in a rural section of McCracken County. According to Detective Norman, police had to fabricate a sign for the property because there was no road sign or numerical address for that location.

On May 15, the cooperating witness received a call from someone stating he was put in touch with her by the people in Mexico and that he would be arriving in the area within approximately twenty to thirty minutes. This call was monitored by MCSD detectives. The cooperating witness received a second call shortly thereafter in which the individual or individuals on the other end of the line stated they were in a Toyota passenger car and a white Dodge Durango, approximately one minute away. Both calls were received from the number (714) 651-0163. Around that time, officers conducting moving surveillance in the area observed a white Toyota Corolla with an Arkansas license plate and a white Dodge Durango with a Tennessee license plate. Moments later, at approximately 9:30 p.m., the white Dodge Durango arrived at 1830 Fisher Road, followed by the white Toyota Corolla.

The detectives did not know the identity of the caller or who was expected to arrive at the Fisher Road location, and neither drugs nor money were discussed during either of the calls received by the cooperating witness. Detectives had not heard Defendant's name mentioned in any of prior the calls or text messages between Boggess and the cooperating witness, and detectives had no recorded or monitored conversations either between Boggess and Defendant or between Defendant and the cooperating witness.

The detectives arrested Defendant immediately upon his arrival at the Fisher Road address. Detective Norman testified that Defendant was not asked any questions before being taken into custody and advised of his *Miranda* rights. Defendant invoked his right to remain silent and made no statements to the detectives.

Three cell phones were seized from Defendant's vehicle: two operable and one broken. Neither of the operable phones matched the number that had called the cooperating witness, and the detectives have not determined conclusively that the (714) 651-0163 number either belongs to the broken phone or was registered to Defendant. Sergeant Riddle testified that they were unable to ascertain when the third phone had been broken.

The detectives ran a narcotic-detection K-9 around the vehicles, and the K-9 alerted to the odor of narcotics. Search warrants were obtained and later executed in the early morning hours of May 16. During the course of the search, detectives found a tool kit consisting of several different ratchets; however, no contraband was located. A second, more extensive search of both vehicles was conducted sometime later. (Despite disassembling several portions of the Dodge Durango, again no drugs were found. Then, in late May, Detective Norman received a tip from an inmate at the McCracken County Jail that led detectives to discover a quantity of what appeared to be meth hidden in the engine block of the Dodge Durango.

DISCUSSION

**I.      Defendant's Motion is Not Barred by the Doctrine of Issue Preclusion.**

As an initial matter, the United States argues that Defendant should be barred from raising the issue of probable cause.  The United States urges that this Court should give full faith and credit to the McCracken District Court's finding of probable cause at the preliminary hearing following Defendant's warrantless arrest.  In essence, the United States argues that the doctrine of collateral estoppel should bar Defendant from raising the issue of probable cause to arrest, because that issue already has been decided by the state court.  The United States concedes that the issue of collateral estoppel and the application of the Full Faith and Credit Act do not often arise in federal criminal prosecutions; however, the United States supports its position by pointing to a handful of decisions in which courts have found that an issue decided in a state court criminal proceeding cannot be relitigated in a subsequent § 1983 action in federal court.  Though the United States' argument is well-taken, this Court cannot agree that Defendant is precluded from raising the issue of probable cause to arrest in his instant Motion to Suppress.

The Full Faith and Credit Act provides, in pertinent part:  "The records and judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."  28 U.S.C. § 1738.  Thus, this Court must normally give Kentucky state court judgments "the same preclusive effect as would be given that judgment under the law of the State."  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  "This rule applies to issues adjudicated in

state-court criminal proceedings." *United States v. Dominguez*, 359 F.3d 839, 841 (6th Cir. 2004) (citing *Allen v. McCurry*, 449 U.S. 90 (1980)).

The Sixth Circuit advises that a federal court must look to the rendering state's law of issue preclusion to determine whether the state court's adjudication of an issue precludes relitigation of that same issue in the federal court. *Id.* at 841-42. Under Kentucky law, issue preclusion—also referred to as "collateral estoppel"—"allows the use of an earlier judgment by one not a party to the original action to preclude relitigation of matters litigated in the earlier action." *Miller v. Admin. Office of Courts*, 361 S.W.3d 867, 871 (Ky. 2011). Stated differently, "the doctrine [of issue preclusion] prohibits issues which were adjudicated in a previous lawsuit from being relitigated in a subsequent lawsuit." *Id.* (quoting *Yeoman v. Commonwealth of Ky., Health Policy Bd.*, 983 S.W.2d 459, 465 n.2 (Ky. 1998)). "The doctrine of issue preclusion is properly asserted by 'a person who was not a party to the former action nor in privity with such a party.'" *Id.* at 872 (quoting *Moore v. Commonwealth*, 954 S.W.2d 317, 319 (Ky. 1997)). "The rule contemplates that the court in which [issue preclusion] is asserted shall inquire whether the judgment in the former action was in fact rendered under such conditions that the party against whom [issue preclusion] is pleaded had a realistically full and fair opportunity to present the case." *Id.* (quoting *Moore*, 954 S.W.2d at 319); *see also Hauling v. Powell*, 2012 WL 21204976, at *6 (Ky. Ct. App. May 23, 2003) (citing *Moore* to reiterate that "the party bound by the doctrine must have been given a full and fair opportunity to litigate the issue in the prior proceeding"). Issue preclusion applies when five elements are met:

> (1) at least one party to be bound in the second case must have
> been a party in the first case; (2) "the issue in the second case must

> be the same as the issue in the first case"; (3) "the issue must have
> been actually litigated"; (4) "the issue was actually decided in that
> action"; and (5) "the decision on the issue in the prior action must
> have been necessary to the court's judgment" and adverse to the
> party to be bound.

*Id.* (quoting *Yeoman*, 983 S.W.2d at 465).

The Court cannot conclude that a probable cause determination at a postarrest preliminary hearing is sufficient to satisfy the requirements for preclusion of that issue under Kentucky law. Defendant was arrested on May 15, 2013. According to the certified docket sheet from McCracken District Court, which the United States introduced during the suppression hearing, a preliminary hearing was held the following day on May 16.[2] An unsigned, undated, handwritten notation on that docket sheet reads: "Preliminary hearing held, probable cause found." Beyond this, however, there is nothing to indicate what facts were presented, what evidence was considered by the state court, or on what basis that court found probable cause.[3] Furthermore, there is

---

[2] The Court is not entirely clear on when the preliminary hearing was held. The United States represented that the hearing was held on May 23. (Docket No. 63, at 5.) The state court docket sheet contains a number of dates and is less than clear as when the hearing was held. As best the Court can tell, the docket sheet appears to show that the hearing was held on May 16. Regardless, the Court's analysis would not be affected were the hearing in fact held on May 23.

[3] Based on the Court's review of the Kentucky Rules of Criminal Procedure, a preliminary hearing is held to determine whether there exists probable cause that a crime was committed, not to determine whether the police had probable cause at the moment of arrest. *See* Ky. R. Crim. P. 3.02(2). As several Kentucky courts have noted, "the purpose of a preliminary hearing is limited and served only to determine whether there is sufficient evidence to justify detaining the defendant in jail or under bond until the grand jury has an opportunity to act on the charges." *Delahanty v. Commonwealth ex rel. Maze*, 295 S.W.3d 136, 142 (Ky. Ct. App. 2009) (citing *King v. Venters*, 595 S.W.2d 714 (Ky. 1980)); *see also Commonwealth v. Wortman*, 929 S.W.2d 199, 200 (Ky. Ct. App. 1996) ("The sole purpose of a preliminary hearing under our rules is to determine whether there is probable cause to believe that the defendant committed a felony, and, if so, whether and under what conditions he is to be released pending indictment. The preliminary hearing is not a mini-trial, nor is it a discovery tool for the defense." (citations omitted)).

nothing to indicate that the precise issues raised by Defendant's Motion to Suppress were ever raised or decided by the state court, beyond its initial probable cause finding at the preliminary hearing. There is nothing to indicate that Defendant filed a motion to suppress in that court or that the state court held an evidentiary hearing on any such motion. Thus, there is nothing to indicate that Defendant had a "full and fair opportunity" to litigate the issue of probable cause at this preliminary hearing.

This Court's decision in *Fields v. Louisville/Jefferson Cnty. Metro Gov't* provides a useful comparison to the instant case. *See* 2007 WL 4224216, at *6-7 (W.D. Ky. 2007). There, the Court found that a § 1983 claimant was precluded from relitigating the issue of probable cause where that issue had been considered and decided by the state court in the claimant's underlying criminal prosecution. Specifically, the claimant in *Fields* filed a motion to suppress in the state court proceedings, the state court afforded him the opportunity to contest probable cause in an evidentiary hearing on his motion, and, after considering that evidence, the state court denied his motion to suppress. *Id.* at 6. By contrast, here, Defendant did not file a motion to suppress in the state court, the state court did not conduct an evidentiary hearing (aside from the preliminary hearing), and there is nothing to indicate that the state court considered the merits of the issues raised by Defendant's instant Motion.

Accordingly, the Court concludes that the necessary elements for issue preclusion are not present here. The Court is further of the opinion that the interests of equity and justice weigh against imposing a procedural bar on Defendant's Motion to

Suppress.[4] Thus, the Court declines to deny Defendant's Motion on this basis and will proceed to consider the merits of the arguments raised therein.

## II. Police Had Sufficient Probable Cause to Arrest Defendant Jimenez.

The Fourth Amendment protects the "right of people to be secure in their persons . . . against unreasonable seizures." U.S. Const. amend. IV. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009) (alteration in original) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Id.* (citing *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir.2007); *Henry v. United States,* 361 U.S. 98, 102 (1959)). Thus, "the Fourth Amendment requires that 'a law enforcement officer may not seize an individual except after establishing probable cause that the individual has committed, or is about to commit, a crime.'" *Radvansky v. City of Olmstead Falls*, 496 F.3d 609, 614 (6th Cir. 2007) (quoting *Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 636 (6th Cir. 2004)); *see also Beck v. Ohio*, 379 U.S. 89, 91 (1964).

In determining whether an arrest is supported by probable cause, the Court must look to the totality of the circumstances. *United States v. Romero*, 452 F.3d 610, 616

---

[4] The United States' argument appears to fail for an additional reason as well. Namely, the United States' position appears inconsistent with Ky. R. Crim. P. 3.14, titled "Probable cause finding," which provides: "Objections to evidence on the ground that it was acquired by unlawful means are not properly made at the preliminary hearing. Motions to suppress must be made to the trial court . . . ." Ky. R. Crim. P. 3.14(3). Thus, any motion seeking to suppress evidence obtained as a result of an unlawful warrantless arrest would have to be brought before the trial court (which, in the case of a felony, would be the circuit court) and could not be properly raised before the district court during a preliminary hearing.

(6th Cir. 2006). Furthermore, because "[p]robable cause is assessed 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight,'" *id.* at 615 (quoting *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001)), in determining whether probable cause existed, the Court considers "only the information possessed by the arresting officer at the time of arrest," *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008) (citations omitted); *see also Radvansky*, 496 F.3d at 615 n.4 (reiterating that the relevant inquiry "examines only the facts available to the officers as they made their decision to arrest [the defendant]"). Although a "mere suspicion of criminality" is insufficient, *Williams ex rel. Allen*, 370 F.3d at 637, probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity," *United States v. Ogbuh*, 982 F.2d 1000, 1002 (6th Cir. 1993) (quoting *Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983)).

Thus, the question before the Court is whether, at the moment of his arrest, the facts and circumstances within the detectives' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a reasonable officer believing that Defendant had committed or was committing a crime. Whether probable cause existed under the totality of the circumstances here is arguably a close call.

Both Sergeant Riddle and Detective Norman testified that Defendant was arrested immediately upon arriving at the Fisher Road address. (*See* Docket No. 63, at 31, 40-41, 47.) Thus, the precise moment of Defendant's arrest appears to be undisputed. Based on the evidence presented at the suppression hearing, the following was known to police at the time of Defendant's arrest:

- In a prior investigation, Sergeant Riddle had arrested Boggess on charges of trafficking meth;
- Boggess bonded out of jail and fled to Mexico;
- Sergeant Riddle had a cooperating witness whom he believed to be reliable based on a prior experience;
- MCSD detectives had monitored phone calls and text messages between Boggess and the cooperating witness in which the detectives attempted to arrange for a quantity of meth to be delivered to McCracken County;
- Boggess told the cooperating witness that he had a contact in Mexico who would get in touch with someone in Arkansas;
- Boggess's contact in Arkansas would deliver the meth on May 15, would be departing Arkansas sometime in the evening around 4:00 or 5:00 p.m., and was approximately a four-hour drive away;
- The cooperating witness provided Boggess the delivery address, 1830 Fisher Road, which was an abandoned house in rural McCracken County;
- The Fisher Road address was, in effect, a nonexistent address, for which detectives had to fabricate a sign identifying it with fictitious numerics;
- Boggess told the cooperating witness that the individual from Arkansas would call her when he got close to her location;
- The cooperating witness received a call on May 15 from an unknown individual stating he was put in touch with her by someone in Mexico and would be arriving within twenty to thirty minutes;
- Detectives conducting mobile surveillance observed a white Toyota Corolla with Arkansas plates following a white Dodge Durango with Tennessee plates heading toward the Fisher Road address;
- The cooperating witness received a second call from an unknown individual stating he was roughly a minute away;
- A white Dodge Durango and a white Toyota Corolla driven by Defendant pulled into the driveway at 1830 Fisher Road, at which point Defendant was arrested.

Prior to Defendant's arrest, MCSD detectives had no specific information connecting Defendant with Boggess or with any drug activity. Defendant was never

mentioned or identified in any communications between Boggess and the cooperating witness, and there is no direct evidence of any contact between Boggess and Defendant. In fact, Sergeant Riddle testified he could "only assume" there was some connection between Boggess and Defendant. Other than a vague reference to "the people in Mexico," detectives had no specific information connecting the unknown caller with Boggess or with any drug activity. The two calls received by the cooperating witness did not mention drugs or money, only location. There was no confirmation that the two calls received from the phone number (714) 651-0163 were connected with Defendant, or that (714) 651-0163 was registered to Defendant or otherwise associated with him.

However, as noted above, probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Ogbuh*, 982 F.2d at 1002 (quoting *Gates*, 462 U.S. at 244 n. 13). Though arguably a close-call, the Court finds that, in view of the totality of the circumstances, a probability or substantial chance of criminal activity by Defendant was established at the time of his arrest.

Here, the scheduled delivery of meth was arranged by a known cooperating witness. *See United States v. Tillman*, 404 F. App'x 949, 952 (6th Cir. 2010) (finding that a known informant is inherently more credible because the informant can be held accountable for providing false information); *United States v. Couch*, 367 F.3d 557, 560-61 (6th Cir. 2004) (same). Although she had been a cooperating witness only a single time prior, in this instance she provided detailed information, almost if not all of which proved to be accurate and was verified prior to Defendant's arrest. As such, by

the time of Defendant's arrest she had established herself as a reasonably reliable and credible informant.

More importantly, perhaps, Defendant showed up at a particular place and at a particular time consistent with the particular details of the transaction arranged between the cooperating witness and Boggess. The detectives had information that the courier would be leaving Arkansas around 4:00 or 5:00 p.m. and driving approximately four hours. Consistent with this projection, Defendant arrived at the prearranged Fisher Road address at approximately 9:30 p.m. driving a vehicle with Arkansas plates. Defendant also arrived at a time consistent with the estimated arrival time communicated to the cooperating witness during the two phone calls. And, additionally, Defendant arrived in a two-vehicle convoy consistent with the information communicated to the cooperating witness. Thus, by the point of Defendant's arrest, the detectives had corroborated most if not all of the key elements of the transaction arranged by their cooperating witness. *See United States v. Strickland*, 144 F.3d 412, 417 (6th Cir. 1998) (holding that "the corroboration of a certain amount of information provided by an informant can be sufficient to establish probable cause to arrest and search a criminal suspect").

Moreover, a number of the corroborated occurrences were markedly unusual in nature. *See id.* ("The more unusual the occurrences are that the police are able to confirm, the stronger the showing of probable cause, and vice versa."). The designated location for the meet was an abandoned, rural residence located at a nonexistent street address that detectives fabricated for the purpose of this investigation. This made-up address was provided by the cooperating witness to Boggess, who in turn was to pass it

along to the courier. The Sixth Circuit addressed an analogous scenario in *United States v. Strickland*, writing:

> [T]he police here did not witness any actual illegality, and thus it is possible to imagine innocent explanations for the similarities between the informant's prediction of events and the events as they actually occurred. It is conceivable, for example, that Strickland merely decided to go for a bucolic evening drive to the [prearranged location] with two associates, and to duck into [the informant's] car to say hello and chat for a while while his associates loitered around the parking lot. Conceivable, we emphasize, but not very likely to an objective observer exercising common sense.

*Id.* The same reasoning applies here. Though it is conceivable that Defendant innocently decided to spend the evening of May 15 driving up from Arkansas to a nonexistent rural address in McCracken County, such a scenario would appear exceedingly unlikely under these circumstances.

Though the Court has found no case on all fours with the particular facts of this case, a number of analogous decisions support the Court's conclusion here. *See United States v. Gill*, 685 F.3d 606, 610 (6th Cir. 2012) (finding probable cause to arrest, despite that the planned drug transaction had not yet taken place, where police had corroborated key elements of an informant's tip, including the color and make of defendant's vehicle and the location of the arranged drug sale); *Strickland*, 144 F.3d at 417 (finding probable cause to arrest where police had a detailed tip from an informant and had substantially corroborated those details, in spite of the fact that officers did not actually witness any illegal activity); *accord United States v. Slone*, 636 F.3d 845, 849 (7th Cir. 2011) (finding that "police developed probable cause to believe that [the defendant] was part of a drug conspiracy because of the extended, coordinated activity

that law enforcement observed"); *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985) (finding probable cause for arrest where police surveillance corroborated the specific, detailed information received from informant in regard to when, where, and how the drug transaction would occur). Accordingly, on these facts, the Court finds that the detectives had probable cause to arrest Defendant when they did.

CONCLUSION

For the foregoing reasons, the Court finds that police had probable cause to arrest Defendant based on the totality of the circumstances. Therefore, having considered the testimony and evidence presented during the suppression hearing, as well as the pre- and posthearing briefing on this matter;

IT IS HEREBY ORDERED that Defendant Jose Manuel Jimenez's Motion to Suppress, (Docket No. 50), is DENIED.

IT IS SO ORDERED.

Date:

cc:     Counsel
        AUSA