UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                                PLAINTIFF

v.                                                                  Criminal Action No.: 5:13-CR-45-R

JOSE MANUEL JIMENEZ                                                                     DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Jose Manuel Jimenez's motion to suppress. (Docket #120). The United States has responded. (Docket #130). For the following reasons, Jimenez's motion to suppress (Docket #120) is DENIED.

Jimenez moves to (I) suppress evidence obtained from a Toyota Corolla; (II) suppress evidence obtained from a Dodge Durango; (III) exclude communications between Jimenez and his wife; and (IV) exclude voice identification testimony.

BACKGROUND

The facts of this case are explained in more detail in this Court's memorandum opinion denying Jimenez's first motion to suppress. (Docket #69). Jimenez was arrested in May, 2013, during an investigation by the McCracken County Sheriff's Office into methamphetamine trafficking in and around McCracken County, Kentucky.

In August, 2012, Sergeant Riddle arrested James Boggess, who allegedly admitted to selling approximately half a pound of methamphetamine each week. Boggess posted bond and was released, but failed to appear for court. Sergeant Riddle testified that through several known and unknown informants, the detectives learned that Boggess had fled to Mexico where he was still operating his business of selling controlled substances through contacts in the McCracken County area.

1

Through the course of investigating Boggess, the MCSD was able to cultivate a cooperating witness who had specific knowledge of Boggess's operations and who could contact Boggess via cell phone. The cooperating witness was successful in arranging for approximately four pounds of methamphetamine to be delivered to a secluded location in McCracken County. Sergeant Riddle said Boggess had given specific instructions and told the cooperating witness that he had a contact in Mexico who would get in touch with someone in Arkansas, who then in turn would deliver the methamphetamine on May 15. Boggess could not say what time specifically the courier would arrive on May 15; however, Boggess but did say that the individual would be traveling from Arkansas "about four hours away" and that he would depart sometime around 4:00 or 5:00 p.m. after getting off work. Boggess was given the delivery address, 1830 Fisher Road, and would be providing that address and the cooperating witness's cell phone number to the individuals on his end. The designated location on Fisher Road was a vacant residence in a rural section of McCracken County. According to Detective Norman, police had to fabricate a sign for the property because there was no road sign or numerical address for that location.

On May 15, the cooperating witness received a call from someone stating he was put in touch with her by the people in Mexico and that he would be arriving in the area within approximately twenty to thirty minutes. This call was monitored by MCSD detectives. The cooperating witness received a second call shortly thereafter in which the individual or individuals on the other end of the line stated they were in a Toyota passenger car and a white Dodge Durango, approximately one minute away. Both calls were received from the number (714) 651-0163. Around that time, officers conducting moving surveillance in the area observed a white Toyota Corolla with an Arkansas license plate and a white Dodge Durango with a

Tennessee license plate. Moments later, at approximately 9:30 p.m., the white Dodge Durango arrived at 1830 Fisher Road, followed by the white Toyota Corolla. Jimenez arrived in the Toyota Corolla. He was immediately arrested.

The detectives ran a narcotic-detection K-9 around the vehicles, and the K-9 alerted to the odor of narcotics. No contraband was found during the initial and subsequent searches. After received a tip from an inmate at the McCracken County Jail, the detectives discovered approximately four pounds of what appeared to be methamphetamine hidden in the engine block of the Dodge Durango.

### I.     Evidence from the Toyota Corolla.

Jimenez moves to suppress evidence found in the Corolla on the basis of a lack of probable cause.

The Fourth Amendment protects the "right of people to be secure in their persons . . . against unreasonable seizures." U.S. Const. amend. IV. "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Id.* (citing *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir.2007); *Henry v. United States,* 361 U.S. 98, 102 (1959). "Probable cause is assessed 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *United States v. Romero*, 452 F.3d 610, 616 (6th Cir. 2006) (quoting *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001)).

This Court previously ruled that there was probable cause to arrest Jimenez when he arrived at 1830 Fisher Road. (Docket #69). The same facts show there was probable cause to search the Corolla. First, the information about the arranged drug purchase was provided by a

known cooperating witness. *United States v. Couch*, 367 F.3d 557, 560-61 (6th Cir. 2004); *United States v. Tillman*, 404 F. App'x 949, 952 (6th Cir. 2010) (finding a known informant is inherently more credible because the informant can be held accountable for providing false information). The two-vehicle convoy that Jimenez arrived in was consistent with the description provided to the cooperating witness. The vehicles arrived at a time consistent with when the cooperating witness had been told the vehicles would arrive. The remote location – an abandoned, rural residence at a nonexistent street address – made it unlikely that two similar vehicles would appear at the same time. "The more unusual the occurrences are that the police are able to confirm, the stronger the showing of probable cause, and vice versa." *United States v. Strickland*, 144 F.3d 412, 417 (6th Cir. 1998). Taken together, these factors show the police had probable cause to search the Corolla.

## II.     Evidence from Dodge Durango.

Jimenez moves to suppress evidence found in the Dodge Durango on the basis of a lack of probable cause. For the same reasons as above, there was probable cause to search the Durango. Additionally, Jimenez lacked a reasonable expectation of privacy in the Durango because Jimenez arrived in the Corolla.

A defendant who challenges a search has the burden of establishing that he had a reasonable expectation of privacy in the area searched. *United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas v. Illinois*, 439 U.S. 128 (1978). "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969);

*see e.g. United States v. Noble*, 762 F.3d 509 (6th Cir. 2014) ("drivers lack standing to challenge the personal search of the passengers in their cars or the admissibility of the contraband found on them").

In this case, Jimenez was neither the driver of nor a passenger in the Durango, nor has Jimenez otherwise demonstrated a reasonable expectation of privacy in the Durango. Accordingly, his motion to suppress evidence seized from the Durango shall be denied.

### III.     Recorded Calls between Jimenez and his Wife.

Jimenez moves to prohibit the government from introducing recorded conversations between Jimenez and his wife. These conversations were recorded while Jimenez was housed at the McCracken County Detention Center. Jimenez argues these conversations are protected by the marital privilege.

"The confidential marital communications privilege excludes confidential communications made by one spouse to the other during the marriage." *United States v. Porter*, 986 F.2d 1014, 1018 (6th Cir. 1993). "The Sixth Circuit has held that there are three prerequisites to the assertion of this privilege: (1) At the time of communication there must have been a marriage recognized as valid by state law; (2) the privilege applies only to utterances or expressions intended by one spouse to convey a message to the other, and (3) the communication must be made in confidence." (citation and punctuation omitted) *United States v. Medlin*, 2010 U.S. Dist. LEXIS 18089 (M.D. Tenn. 2010). "The burden of establishing the existence of the privilege rests with the person asserting it." *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983).

A jail inmate who has been informed that his telephone conversations will be recorded forfeits his claim that the conversations were made in confidence. *Medlin*, 2010 U.S. Dist. LEXIS 18089 *16-18 ("he heard a recorded statement telling him that his call was not confidential and that it would be recorded and/or monitored. . . [t]hus, Defendant had no expectation of privacy in those calls"); *see also United States v. Hadley*, 431 F.3d 484, 489 (6th Cir. 2005); *United States v. Madoch*, 149 F.3d 596, 602 (7th Cir. 1998).

Before each call that Jimenez placed from jail, a recorded message in English and Spanish warned callers that their conversations would be recorded. (Docket #130). Therefore, these conversations were not confidential and the marital privilege does not prohibit the introductions of these recordings.

### IV. Voice Identification.

Finally, Jimenez moves to exclude any government witness from identifying Jimenez's voice from the telephonic conversations that occurred on the night of May 15, 2013. Jimenez argues that these witnesses had not heard Jimenez's voice prior to his arrest on May 15, 2013.

The "Federal Rules of Evidence allows voice identification by someone who became familiar with the voice *at any time* and does not place a time limitation on the familiarity." (emphasis in original) *United States v. Simms*, 351 Fed. Appx. 64, 69 (6th Cir. 2009) (unpublished); *United States v. Sims*, 113 F. Supp. 2d 1130, 1132 (E.D. Mich. 2000). The "requisite familiarity may be acquired either before or after the particular speaking which is the subject of the identification." Notes of Advisory Committee on Fed. R. Evid. 901.

"Under FRE 901(b)(5), so long as an identifying witness is 'minimally familiar' with the voice that he or she identifies, the foundational requirements of 901(b) are satisfied." *Millender v. Adams*, 187 F. Supp. 2d 852, 869 (E.D. Mich. 2002) (collecting cases). "Several federal cases

have held that a single contact with a defendant's voice is a sufficient basis to permit the voice identification under (901)((b)(5)." *Id.* (collecting cases) ("[the argument that] these witnesses may have only heard petitioner's voice one time went to the weight, not the admissibility, of their testimony").

Jimenez's argument that the United States' witnesses had not heard Jimenez's voice before the May 15, 2013 calls fails because a witness may identify a voice even though they did not become familiar with that voice until after the identified conversation.  Any argument that the United States' witnesses had limited opportunities to become acquainted with Jimenez's voice go to the weight, not the admissibility, of the testimony.  After the United States lays the foundation that provides the basis for recognizing the voice of Jimenez, the United States must then approach the bench before admitting that evidence.  Jimenez may renew his objection at that time if his counsel feels that is appropriate.

## CONCLUSION

For the foregoing reasons, Jimenez's motion to suppress (Docket #120) is DENIED.

cc: counsel of record