## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION
## CRIMINAL ACTION NO. 5:13-cr-00045-TBR-LLK-1

UNITED STATES OF AMERICA                                     PLAINTIFF

V.

JOSE MANUEL JIMENEZ                                          DEFENDANT

### MEMORANDUM OPINION AND ORDER

Before the Court is Jose Manuel Jimenez's Motion for Compassionate Release. [DN 227]. The United States responded. [DN 231]. Jimenez did not reply, but the time to do so has passed. The motion is ripe for adjudication. For the reasons stated below, the motion is DENIED.

### I.    Background

In April 2015, Jimenez was convicted of methamphetamine distribution and conspiracy to distribute methamphetamine. [DN 151]. In August 2015, this Court entered judgment committing Jimenez to the custody of the Bureau of Prisons ("BOP") for a 262-month prison term. [DN 177]. Jimenez has filed the instant motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) because of coronavirus. [DN 227]. Jimenez argues that because he suffers from hypertension and obesity, he is at high risk of death or serious illness from coronavirus. *Id.* Jimenez claims that he submitted a request for compassionate release through the BOP's administrative process on May 26, 2020, and the request was denied on June 3, 2020. *Id.* at 4. Jimenez supports this claim with documentation. [DN 227-2 at 1-4]. In response to Jimenez's motion, the United States argues that Jimenez has not exhausted his administrative remedies, Jimenez has not presented extraordinary and compelling reasons warranting release, and relief is improper under the sentencing factors set forth in 18 U.S.C. § 3553(a). [DN 231].

1

## II.  Standards

The Sixth Circuit recently articulated the standards a district court uses in evaluating a compassionate release motion:

> The compassionate release statute allows the district court to reduce a defendant's sentence if it finds that "extraordinary and compelling reasons" warrant a reduction; that a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and that the § 3553(a) factors, to the extent they apply, support a reduction. 18 U.S.C. § 3582(c)(1)(A); see *United States v. Ruffin*, 978 F.3d 1000, 1004–05 (6th Cir. 2020). But where an inmate files the motion for compassionate release, "district courts need not consider" the policy statement in § 1B1.13 of the Sentencing Guidelines. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). And because satisfying the § 1B1.13 policy statement is no longer a requirement for defendant-filed compassionate release motions, the policy statement's requirement that the defendant not be a danger to the community no longer provides an independent basis for denying compassionate release. *United States v. Hampton*, 985 F.3d 530, 533 (6th Cir. 2021). In other words, a district court may deny a defendant-filed motion only when it finds either that no extraordinary and compelling reasons exist or that the § 3553(a) factors weigh against release. See *Elias*, 984 F.3d at 519.

*United States v. Greene*, No. 20-3848, 2021 WL 1016430, at *2 (6th Cir. Mar. 17, 2021).

Where, as here, an incarcerated person files a motion for compassionate release directly, the district court has full discretion to define and determine whether an "extraordinary and compelling" reasons exist without consulting the § 1B1.13 policy statement. *Elias*, No. 984 F.3d at 519-20 (citing *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020)). However, as this Court has previously stated, the policy statement may still provide a useful starting point to determine whether extraordinary and compelling reasons exist, because Congress provided no statutory definition of "extraordinary and compelling reasons" in section 3582(c)(1)(A). *Ruffin*, 978 F.3d at 1004. Instead, Congress directed the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. Adkins*, No. 5:18-058-DCR, 2020 WL 7755629, at *1 (E.D. Ky. Dec. 29, 2020) (quoting 28 U.S.C. § 994(t)).

2

Those descriptions are found in § 1B1.13 of the United States Sentencing Guidelines (policy statement) and the application notes to that section.

The policy statement describes four categories of extraordinary and compelling reasons. The first three relate to an inmate's serious medical conditions, age, and status as a caregiver. U.S.S.G. § 1B1.13, cmt. n.1(A)–(C). Specific medical conditions of a defendant constituting extraordinary and compelling reasons for a reduction in terms of imprisonment may include "terminal illness," "a serious physical or medical condition," "a serious functional or cognitive impairment," or "deteriorating physical or mental health because of the aging process." *Id.* The application note to U.S.S.G. § 1B1.13 further provides that the age of a defendant may be a necessary and compelling reason for a reduction in terms of imprisonment when "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.* The last category is a catch-all provision titled "Other Reasons," which reads: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13, cmt. n.1(D).

Though the policy statement still provides a useful starting point to determine whether extraordinary and compelling reasons exist, the Court can and does look to other reasons when ruling on a motion for compassionate release. The present motion represents many filed by incarcerated persons around the country who have limited control of their environment, often cannot practice social distancing, and are concerned about contracting COVID-19. The Sixth Circuit acknowledged this concern and approved the following two-part test "for deciding when the concern of contracting COVID-19 becomes an extraordinary and compelling reason for

compassionate release: (1) when the defendant is at a high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak." *Elias*, 984 F.3d at 520 (quoting *United States v. Hardin*, No. 19-CR-240, 2020 WL 2610736, at *4 (N.D. Ohio May 22, 2020) (internal quotation marks omitted)).

## III.   Discussion

Under the First Step Act, a defendant may move for compassionate release on his own after the defendant "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *United States v. Pegram*, No. 20-1906, 2021 WL 499572, at *2 (6th Cir. Feb. 10, 2021). "The defendant bears the burden of showing he has exhausted his administrative remedies and is entitled to compassionate release." *United States v. Hughes*, No. 2:13-cr-20142-SHM-13, 2021 WL 254315, at *2 (W.D. Tenn. Jan. 25, 2021) (citing *United States v. Ebbers*, 432 F. Supp. 3d 421, 426-27 (S.D.N.Y. 2020)).

The parties dispute whether Jimenez has exhausted his administrative remedies. Jimenez attaches his administrative request for compassionate release submitted on May 26, 2020 and its denial by the warden on June 3, 2020. [DN 227-2 at 1-4]. Jimenez filed his motion with this Court on August 25, 2020. [DN 227]. The government argues that Jimenez failed to exhaust his administrative remedies because Jimenez did not appeal the warden's denial of his request, but instead, filed his motion with this Court. [DN 231 at 6]. At least one other district court in the Sixth Circuit has held that the First Step Act's exhaustion requirement is satisfied only when (1) a warden has failed to address an initial request for compassionate release within thirty days, or (2) the defendant appeals a warden's denial of the request for compassionate release through the BOP's

Administrative Remedy Procedure. *United States v. Haas*, No. 6:17-cr-00037-GFVT-HAI-1, 2020 WL 4593206, at *1-5 (E.D. Ky. Aug. 7, 2020). Under that interpretation of exhaustion, Jimenez did not satisfy the exhaustion requirement. However, the Sixth Circuit has stated, "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them." *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020). The *Alam* court further stated that when prisoners want to bring compassionate release motions on their own behalf, they must exhaust administrative appeals "or wait 30 days after [their] first request to the prison." *Id.* at 833-34 (citing 18 U.S.C. § 3582(c)(1)(A)). Under this interpretation, Jimenez did satisfy the exhaustion requirement. Although *Alam* was not directly addressing the issue of whether a defendant needs to appeal a warden's denial of his first request for compassionate release to satisfy § 3582(c)(1)(A)'s exhaustion requirement, the Sixth Circuit still has not had occasion to directly address the issue.[1] Though reasonable minds may differ on this point,[2] this Court will enforce the interpretation suggested in *Alam*. Thus, because Jimenez filed his motion more than thirty days after his request for compassionate release, he has satisfied the exhaustion requirement. The Court proceeds to the merits.

Jimenez claims that he suffers from obesity and hypertension. [DN 227 at 2]. Jimenez states: "Mr. Jimenez's documented history of hypertension, combined with the novel coronavirus pandemic, constitutes 'extraordinary and compelling' circumstances warranting relief." *Id.* at 5.

---

[1] While the Sixth Circuit has not addressed the issue directly, the court impliedly reaffirmed the *Alam* interpretation of exhaustion in *United States v. Hampton*, 985 F.3d 530, 532 (6th Cir. 2021), and *United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020). Thus, it appears that the most important factor in evaluating exhaustion is whether the prisoner has waited thirty (30) days from the time of submitting his first request to the warden for compassionate release before filing his motion for compassionate release with the court.

[2] *See United States v. Bolze*, No. 3:09-CR-093-TAV-CCS-1, 2020 WL 6151561, at *4 (E.D. Tenn. Oct. 20, 2020) (citations omitted) ("[R]easonable minds may disagree as to whether a motion automatically ripens after the passage of thirty (30) days from a defendant's request to the warden . . . although the Sixth Circuit has yet to encounter the issue presented here, it implied that it would read § 3582(c)(1)(A) to allow a defendant to file a motion after thirty (30) days had passed from the filing of a request with the warden, regardless of whether the warden had responded and regardless of the appeal status of a denial by the warden.").

The Center for Disease Control and Prevention (CDC) website confirms that obesity places adults at increased risk of severe illness from coronavirus, and hypertension *might* place adults at increased risk for severe illness from coronavirus.[3] Jimenez also argues that the facility at which he his housed, FCI Terminal Island, is overwhelmed with coronavirus. *Id.* at 6-7. The BOP website confirms that Jimenez is a 40-year-old male housed at FCI Terminal Island in San Pedro, California, and his current release date is December 24, 2031.[4] However, some time has passed since Jimenez filed his motion for compassionate release, and thankfully, the current statistics indicate that of the 662 total inmates housed at FCI Terminal Island, there are 0 active cases of coronavirus in inmates.[5]

Jimenez further argues that the Section 3553(a) sentencing factors weigh in favor of his release. [DN 227 at 7]. He contends that he would pose no risk to safety of the community, as he has participated in "extensive educational and rehabilitative programming" and kept a close relationship with his family members while incarcerated. *Id.* at 7-8. Jimenez also says that if released, he would stay with his mother, and he is "well equipped to handle the potential challenges of reentry." *Id.* at 8.

The United States argues that Jimenez does not present extraordinary and compelling reasons for release. [DN 231 at 7]. The United States contends that FCI Terminal Island is tending to Jimenez's medical needs, and Jimenez has failed to show that the facility would be incapable of caring for him if he did contract coronavirus, or that he is at a greater risk for contracting

---

[3] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 24, 2021).
[4] *Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/mobile/find_inmate/index.jsp (under Type of Number category, select BOP Register Number from dropdown box, and then under Number category, input "66563-180") (last visited March 24, 2021).
[5] *COVID-19*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited March 24, 2021); FCI Terminal Island, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/trm/ (last visited March 24, 2021).

coronavirus inside the prison that outside of it. *Id.* at 8. The United States further argues that the § 3553(a) factors advise against Jimenez's compassionate release because of the nature and circumstances of his crimes. *Id.* at 11-12 (citing DN 169 at Page ID# 635-36) ("Jimenez was convicted of very serious crimes involving large scale distribution of methamphetamine . . . Jimenez's also has stated he plans on killing a confidential informant who he believes set him up . . . Jimenez remains a severe threat to the safety of the public."). The United States contends that Jimenez's history and characteristics do not support relief because Jimenez has a criminal history involving dealing narcotics, street racing, and driving with a suspended license. *Id.* at 12. Finally, the United States argues that Jimenez "has admitted to abusing alcohol, cocaine, and methamphetamine," and reducing his sentence to time served "would not reflect the seriousness of his crimes, deter him from criminal activity, or protect the public." *Id.* at 13.

Jimenez has not presented the Court with extraordinary and compelling reasons that warrant compassionate release. Even accepting that Jimenez suffers from obesity and hypertension, these conditions do not call for compassionate release on their own. Moreover, FCI Terminal Island is reporting no active cases of coronavirus among its inmate population. Further, Jimenez still has more than ten years of his 262-month sentence left to serve. Even if the Court were to find that Jimenez had presented the Court with extraordinary and compelling reasons to justify his compassionate release, the Court agrees with the United States that the § 3553(a) factors weigh against release. Particularly persuasive is 18 U.S.C. § 3553(a)(1): "the nature and circumstances of the offense and the history and characteristics of the defendant." As stated above, Jimenez was sentenced to a 262-month term of imprisonment for methamphetamine distribution and conspiracy to distribute methamphetamine. As the Sixth Circuit explained in addressing Jimenez's direct appeal, the drug transaction that led to Jimenez's arrest and eventual conviction

7

indicated that Jimenez was trafficking meth for another criminal target who was trafficking drugs out of Mexico after escaping the United States while on bond, and the transaction involved 1,719 grams of methamphetamine. *United States v. Jimenez*, 654 F. App'x 815, 816-18 (6th Cir. 2016). Further, as the United States highlights, Jimenez has a criminal history involving dealing narcotics, among other things. [DN 231 at 12-13] (citing DN 169, Page ID# 638-640). In short, the nature and circumstances of Jimenez's offenses of conviction and his history and characteristics weigh against compassionate release. Because Jimenez has not presented the Court with extraordinary and compelling reasons that warrant release, and because the sentencing factors also weigh against release, the motion for compassionate release is denied.

## IV.    Conclusion

For the reasons stated above, Jimenez's motion for compassionate release in light of Covid-19, DN 227, is **DENIED**.

**IT IS SO ORDERED**.

**Thomas B. Russell, Senior Judge**
**United States District Court**

March 26, 2021

cc: counsel

Jose Manuel Jimenez
66563-180
TERMINAL ISLAND
FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. Box 3007
San Pedro, CA 90733
PRO SE

8