## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

UNITED STATES OF AMERICA

v.                                                  No. 5:13-cr-45-BJB-LLK

JOSE MANUEL JIMENEZ

* * * * *

## MEMORANDUM OPINION & ORDER

Jose Manuel Jimenez is serving a 262-month sentence for two drug-trafficking convictions. Citing his rehabilitative history, age, health background, the Covid-19 pandemic, and a recent but explicitly non-retroactive change in sentencing requirements, Jimenez seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A). But because Jimenez neither shows that extraordinary and compelling reasons warrant his release, nor addresses why release is appropriate under the § 3553(a) factors, the Court denies his motion.

### I.

Law-enforcement officers arrested Jimenez in 2013 during a controlled buy and later discovered his car contained more than 1,700 grams of methamphetamine. Presentence Investigation Report (DN 169) at 5–6. A jury convicted Jimenez of methamphetamine distribution and conspiracy to distribute methamphetamine. Jury Verdict (DN 151) at 1–2. The two counts carried a minimum sentence of 20 years and (for Count 2) a maximum of life imprisonment. PSR at 1. The sentencing guidelines provided for a range of 262 to 327 months in custody. *Id.* at 17. The Court ultimately sentenced him to the low end of the guidelines range. *See* Judgment (DN 177) at 3.

This is Jimenez's second request for compassionate release. The Court rejected his initial contention that his health conditions and the Covid-19 pandemic warranted an early release. *See* Order Denying Release (DN 232) (March 26, 2021). This motion is similar: Jimenez maintains his arguments based on Covid-19 and his health background, while adding his age, rehabilitative history, and the changes in sentencing law as supporting factors. *See* Second Motion for Compassionate Release (DN 246) at 3. The Bureau of Prisons estimates that Jimenez has nearly 91 months of imprisonment remaining, with an expected release date in January 2031. *See Find an Inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited June 30, 2023).

1

## II.

District courts apply a "three-step inquiry" in considering a compassionate-release motion filed under § 3582(c)(1)(A). *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quotation omitted). Release is appropriate only if (1) the prisoner shows that "extraordinary and compelling reasons warrant the [sentence] reduction," (2) the Court determines that "any sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) the prisoner "persuade[s] the district judge to grant the motion after the court considers the § 3553(a) factors." *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (en banc) (quotations omitted). Those factors include the prisoner's "history and characteristics, including his propensity to be a danger to the community upon release, as well as the nature and circumstances of his offense." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing § 3553(a)(1)–(2)).

A prisoner typically must exhaust available administrative remedies before moving for compassionate release. *See* § 3582(c)(1)(A). That is, he must submit a compassionate-release request first to the warden—even though recent changes in federal law allow a prisoner to eventually proceed to court if the warden fails to act. *See McCall*, 56 F.4th at 1054. "[A]n imprisoned person" may exhaust his remedies in two ways: he "may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request—whichever is earlier." *United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020). This requirement "serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release)" and in any event "is mandatory (there is no exception for some compassionate release requests over others)." *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The Sentencing Commission has by now "adopted a policy statement that applies when a defendant (as opposed to the Bureau of Prisons) files a motion." *McCall*, 56 F.4th at 1054 (quotation omitted). But that statement has not yet taken effect. Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28,254, 28,254–59 (May 3, 2023) (effective Nov. 1, 2023). So the Court may "skip step two" of the "three-step inquiry" and address the reasons offered as "extraordinary and compelling" and those related to the § 3553(a) factors. *United States v. Hampton*, 985 F.3d 530, 532 (6th Cir. 2021) (quotation omitted). "If either of the remaining prerequisites are lacking, [the] motion fails." *United States v. Roman*, No. 21-3718, 2022 WL 363866, at *2 (6th Cir. Jan. 7, 2022) (quotation omitted).

## III.

As an initial matter, Jimenez does not make clear whether he is asking this Court to consider a new motion for release or reconsider his previous motion. Many of his arguments in this motion resemble those in the previous one. *Compare* Second Motion for Compassionate Release (DN 246) at 3, *with* First Motion for

Compassionate Release (DN 227) at 1–2. And the records attached to his second motion reflect no further filings or compassionate-release requests since his initial submission to the Bureau of Prisons. To the extent the motion is best construed as a request for reconsideration, that request would fail given the lack of any new information or argument that would refute the Court's previous rejection of Jimenez's compassionate-release motion. *See United States v. Colbert*, No. 3:10-cr-151, 2022 WL 3329282, at \*2 (W.D. Ky. Aug. 11, 2022) (district courts typically examine motions for reconsideration "under the same standards applicable to a civil motion to alter or amend judgment" under FED. R. CIV. P. 59(e)); *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 474 (6th Cir. 2009) (defendant must clearly identify one of four factors to justify relief under Rule 59(e) analysis). To the extent the motion is best construed as an entirely new motion for compassionate release, the request would meet the same fate. True, Jimenez hasn't pointed to anything in the record indicating he first raised this issue with the Bureau of Prisons, as the statute calls for. *See* Motion at 1; § 3582(c)(1)(A). But the exhaustion requirement is not dispositive here; it is not jurisdictional but merely a "claim-processing rule"—and one that the Government hasn't asserted (because the Government hasn't responded). *United States v. Miller*, No. 21-3311, 2021 WL 4467781, at \*2 (6th Cir. Sept. 2, 2021). So the Court will not deny the motion "as the result of [a] failure to exhaust his administrative remedies." *Id.*

As to the merits, Jimenez argues that his rehabilitative history, age, health background, the Covid-19 pandemic, and the relevant recent change in sentencing requirements amount to extraordinary and compelling factors warranting release. *See* Motion at 3. As in his previous motion, these factors fall short. And in any event, Jimenez failed to justify his release under the factors set out in § 3553(a).

## A. Extraordinary and Compelling

The district court exercises discretion in defining "extraordinary and compelling" because § 3582(c) does not define the term. *Elias*, 984 F.3d at 519–20. But that discretion is not unlimited. The reasons must be "unusual, rare, and forceful." *McCall*, 56 F.4th at 1055. Jimenez's reasons are not.

*First*, Jimenez cites recent changes in sentencing law. He notes that the First Step Act reduced the mandatory minimums that applied in his case, limited the types of convictions that justify a sentence enhancement, and broadened district-court jurisdiction to compassionately reduce unjust sentences. *See* Motion at 3 (citing 21 U.S.C. § 841(b)(1)(A)). Jimenez concedes that Congress did not make these changes retroactive, but nonetheless argues that district courts may factor these changes into their § 3582(c)(1)(A)(1) analysis. *See* Motion at 7; *McCall*, 56 F.4th at 1056.

But the Sixth Circuit has barred district courts from exercising discretion in the manner Jimenez suggests: "[N]onretroactive changes in sentencing law cannot be 'extraordinary and compelling reasons' that warrant relief." *McCall*, 56 F.4th at

1055. So the "legal developments" Jimenez mentions "do not factor into the extraordinary and compelling analysis. Full stop." *Id.* at 1066.

*Second*, Jimenez cites concerns related to the "ongoing" pandemic, just as he had done in his previous 2020 motion. *See* Motion at 3. The Sixth Circuit has spoken on this issue as well: "[A] defendant's incarceration during the COVID-19 pandemic— when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). And according to the Bureau of Prisons, as of February 25, 2022, "all vaccines are available at all institutions." *COVID-19 Vaccine Guidance*, FEDERAL BUREAU OF PRISONS, at 2 (Feb. 25, 2022), https://www.bop.gov/resources/pdfs/covid_19_vaccine_guidance_v17.pdf. Jimenez hasn't identified any reason he can't or hasn't availed himself of the vaccine. So the pandemic isn't a basis on which to reduce Jimenez's sentence. *Lemons*, 15 F.4th at 751.

*Third*, Jimenez cites (in passing) his age and health background, the latter of which the Court already deemed insufficient in its denial of his previous motion. *See* Order Denying Release at 7. He does not make any drawn-out argument regarding how these factors point in his favor. His age—42 years old—is not extraordinary or compelling. Nor does he connect his age and health to Covid concerns in any meaningful way.

*Fourth*, Jimenez cites his "significant efforts" towards rehabilitation. *See* Motion at 3. He reports that he has obtained a GED, maintained close family relationships, logged 500 hours of educational programming, and "developed efficient work experience." Motion at 17. His allegations regarding the hours of educational programming he achieved are largely unsubstantiated, *see* DN 227-2 at 5, though his remaining arguments—all laudable in and of themselves—find at least some support in his previous filings.

Even accepting all these claims as true, however, these efforts would not tip the scale in Jimenez's favor. The Sixth Circuit is once again clear on this point: "Rehabilitation, for one, is not by itself extraordinary and compelling." *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022). And given the state of the record and Jimenez's arguments, "rehabilitation" is left all "by itself" in support of this motion. After all, "adding a legally impermissible ground to [other] insufficient factual considerations" cannot "entitle a defendant to a sentence reduction." *United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021).

### B. Section 3553(a) Factors

Even if Jimenez had provided an extraordinary and compelling justification under § 3582(c), release would still be inappropriate under § 3553(a). His motion mentions those factors only in passing, falling short of making a "compelling case as

to why the sentencing court's § 3553(a) analysis would be different if conducted today." *Sherwood*, 986 F.3d at 954. To be sure, the Court may consider nonretroactive changes in sentencing law when conducting the § 3553(a) analysis. *See Jarvis*, 999 F.3d at 445. And courts afford leniency to the pleadings of a pro se litigant. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Even so, changes in statutory minimums alone are not sufficient to meet the movant's burden on this point. *See United States v. Maxwell*, 991 F.3d 685, 691 (6th Cir. 2021) (district courts should consider, among other things, the need to "reflect the seriousness of the offense" and the need to "protect the public from further crimes of the defendant").

Jimenez, however, leaned exclusively on Congress's change to sentencing laws that would have applied a reduced minimum sentence if he were sentenced today. He did not address how the § 3553(a) factors, including the nature of Jimenez's crimes and past criminal record, affect the case for a sentence reduction. Those factors do not support early release, particularly given the seriousness of the offense and the need for deterrence and public protection.

This sentencing judge imposed a sentence of 262 months in prison because, among other things, the underlying investigation indicated that Jimenez trafficked methamphetamine from Mexico into the United States for another criminal target. *See* PSR at 4–6. Investigators discovered more than 1,700 grams of methamphetamine in the car that Jimenez drove to the scene of the transaction. *Id.* Further, Jimenez has a criminal history involving illegal drug dealing. *See id.* at 9.

The community-safety factor is especially relevant here because "drug trafficking is a serious offense that, in itself, poses a danger to the community." *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010). The risks posed to the community by large-scale, transnational drug trafficking of a substance as potent and harmful as methamphetamine caution against a sentence reduction under § 3553(a). *See Jarvis*, 999 F.3d at 445.

## ORDER

The Court denies Jimenez's motion for compassionate release (DN 246).